**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SCOTT RUFFNER and JEREMY NIMMO, individually and on behalf of all other persons similarly situated who were employed by GRID ONE SOLUTIONS, <br><br> Plaintiffs, <br><br> v. <br><br> GRID ONE SOLUTIONS, LLC and any related entities, <br><br> Defendant. | Case No: 3:24-CV-1097 (ECC/ML) |

Frank S. Gattuso, Esq., *for Plaintiffs*
William J. Anthony, Esq., *for Defendant*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

On February 25, 2026, Plaintiffs filed an unopposed motion for final approval of the Settlement Agreement, together with a motion seeking the payment of attorneys' fees and costs, settlement claims administration costs, and service awards. *See* Dkt. No. 55. In their memorandum of law, as well as at the Final Fairness Hearing, Class Counsel stated why they believed the Settlement Agreement was fair, reasonable, and adequate. *See id.*; *see also* Text Minute Entry dated March 9, 2026.

As requested by the Court, Class Counsel filed a letter brief in further support of the motion for final approval of the Settlement Agreement and for fees and costs. *See* Dkt. No. 56. Class Counsel moves for an award of attorneys' fees in the amount of $48,000, which constitutes 40%

of the value of the Settlement. *See* Dkt. No. 55-1. For the following reasons, the motion is granted in part and denied in part.

## I.    FACTS

In their Amended Class Action Complaint, Plaintiffs[1] Scott Ruffner and Jeremy Nimmo assert three causes of action against Defendant Grid One Solutions, LLC, alleging violations under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, and Article Six of the New York Labor Law (NYLL) that occurred while they were working as technicians for Defendant. *See generally* Dkt. No. 14.

On October 1, 2025, Plaintiffs filed an unopposed motion for the Court's approval of their proposed Settlement Agreement, which was designed to compensate a class of all hourly non-exempt Entry Level Technicians, Level 2 Technicians, Gas Technicians, and Field Leads employed in New York State by Defendant at any point between November 14, 2022 and July 13, 2024, up to a total of 400 employees. *See* Dkt. No. 48-2 at ¶ 1.6. A December 1, 2025 Order Preliminarily Approving the Class Action Settlement was entered, and a Final Fairness Hearing was set for March 9, 2026. *See* Dkt. Nos. 51, 52. Plaintiffs' Counsel was also ordered to provide contemporaneous billing records with any motion for attorneys' fees and costs. *See* Dkt. No. 51.

On February 25, 2026, Plaintiffs filed an unopposed motion for final approval of the Settlement Agreement, together with a motion seeking the payment of attorneys' fees and costs, settlement claims administration costs, and service awards. *See* Dkt. No. 55. In their memorandum of law, as well as at the Final Fairness Hearing, Class Counsel stated why they believed the Settlement Agreement was fair, reasonable and adequate. *See id.* Class Counsel also advised the

---

[1] Plaintiff Larry Balcolm was a party to the Amended Class Action Complaint, but was dismissed from the action on November 26, 2025. *See* Dkt. No. 50.

Court that notice of the settlement was successfully delivered to 98.2% of the Settlement Class. *See* Dkt. No. 55-5 at 4 (citing Declaration of Claims Administrator Caroline Barazesh (Barazesh Decl.), Exhibit 2 to the Declaration of Frank S. Gattuso at ¶ 10). Specifically, notice was provided to 391 individuals. *See id.* (citing Barazesh Decl. at ¶ 8). Of those 391 mailings, 22 were returned as undeliverable; however, the Claims Administrator was able to find updated mailing addresses for 15 of those 22 undeliverable notices, leaving only 7 of the 391 notices undeliverable. *See id.* (citing Barazesh Decl. at ¶ 9). Furthermore, a total of 112 claims were processed; one individual opted out of the settlement; and no class action members objected to the settlement. *See id.* (citing Barazesh Decl. at ¶¶ 11-13); Dkt. No. 56-2.

## II.    DISCUSSION

### A.  The Settlement Class Meets the Legal Standard for Class Certification

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). On December 1, 2025, the settlement class was preliminarily certified. *See* Dkt. No. 51. Final certification of the following class is now granted: All hourly non-exempt Entry Level Technicians, Level 2 Technicians, Gas Technicians, and Field Leads employed in New York State by Defendant at any point between November 14, 2022 and July 13, 2024.

"Under Rule 23, a class action 'may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).'" *Sanchez v. Kambousi Rest. Partners, LLC,* No. 15 Civ. 5880 2016 WL 11717105, at *4 (S.D.N.Y. Aug. 5, 2016) (quoting *Johnson v. Brennan,* No. 10 Civ. 4712, 2011 WL 4357376, at *4 (S.D.N.Y. Sept. 16, 2011)). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical

of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  *See* Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that:

> [Q]uestions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*Id.* at (b)(3).  "[I]n the Second Circuit, 'Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility' in deciding whether to grant class certification." *Reade–Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

Based upon the reasoning in the previously entered Order Preliminarily Approving Class Action Settlement, the settlement class is certified.

## B. Final Class Action Settlement Approval

Under Rule 23(e) of the Federal Rules of Civil Procedure, the Court must approve the class action settlement.  *See* Fed. R. Civ. P. 23(e).  To grant final approval, the Court must find that the class action settlement is "fair, reasonable, and adequate[.]"  Fed. R. Civ. P. 23(e)(2).  "'Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement.'"  *Cruz v. Sal-Mark Rest. Corp.*, No. 1:17-CV-0815, 2019 WL 355334, at *4 (N.D.N.Y. Jan. 28, 2019) (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005)).  "Courts examine procedural and substantive fairness in light of the 'strong judicial policy favoring settlements' of class action suits."  *Id.* (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quotation marks and citation omitted)).  "'A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in

arm's length negotiations between experienced, capable counsel after meaningful discovery.'" *Id.* (quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (internal quotation marks omitted)).

### 1. Procedural Fairness

"To determine whether a settlement is procedurally fair, courts examine the settlement's terms and the negotiating process leading to settlement." *Elliot v. Leatherstocking Corp.*, No. 3:10-CV-0934, 2012 WL 6024572, at *3 (N.D.N.Y. Dec. 4, 2012) (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 116-117 (citation omitted)). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Here, the settlement was reached after Plaintiffs conducted a thorough investigation and evaluated the claims, and after extensive negotiations between the parties. Plaintiffs engaged in some discovery before agreeing to resolve this case, including interviewing class members, reviewing Defendant's employment records, including payroll and time records, and depositions. *See* Dkt. No. 55-5 at 4. From these sources of information, Plaintiffs were able to evaluate the strengths and weaknesses of their claims. *See id.* The parties attended mediation with Stan Matusz, Esq. *See id.* At all times during the settlement process, the parties negotiated at an arm's-length basis. *See id.* These arm's-length negotiations involved counsel and a mediator, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal–Mart Stores*, 396 F.3d at 116.

### 2. Substantive Fairness

"To determine if a settlement is substantively fair, the Court should examine the facts set forth by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)."

*Elliot*, 2012 WL 6024572, at *3.  "A court need not find that every factor militates in favor of finding fairness; rather, a court considers the totality of these factors."  *Id.* (internal quotation and citations omitted).  The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* (citing *Grinell*, 495 F.2d at 463 (citations omitted)).

In this case, the *Grinnell* factors weigh heavily in favor of the settlement.

### a.  Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs avoid significant expense and delay and ensure a speedy, risk-free recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is no exception, with approximately 391 putative class members with fact-intensive claims under both federal and state law.

Although there has been some discovery, additional discovery would be required before the case would be ready for trial.  The trial would be fact-intensive, involving significant time and resources belonging to all involved.  Any judgment would likely be appealed, thereby extending the duration of the litigation.  This settlement, on the other hand, makes monetary relief available

to class members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of final approval.

### b.  The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).  The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94 Civ. 5587, 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003).

Here, the settlement class has responded positively to the settlement, with no objections and only one class member opting out. *See* Barazesh Decl. at ¶ 11.  "The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate." *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008). Therefore, the second factor weighs in favor of approval.

### c.  Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3)

The parties have completed enough discovery to recommend settlement.  "The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.' *Hernandez v. Between the Bread 55th Inc.,* 17-cv-9541, 2021 WL 12279220, at *3 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)) (internal quotation marks omitted)). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)) (internal quotation

marks omitted) (cleaned up).  The parties' discovery here meets this standard.  As discussed above, Plaintiffs obtained substantial amounts of data, including business records and other relevant information. *See* Dkt. No. 55-5 at 7-8.  In addition, the parties engaged in litigation, months of negotiation, and mediation during which they engaged in a vigorous exchange regarding their respective claims and defenses.  *Id.*

Based on these circumstances, the parties were well-equipped to evaluate the strengths and weaknesses of the case.  *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive").  This factor also weighs in favor of final approval.

### d.  Plaintiffs Would Face Real Risks if the Case Proceeded and in Maintaining the Class Through Trial (*Grinnell* Factors 4, 5, 6)

Although Plaintiffs' case is strong, it is not without risk.  "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969).  In weighing the risks of establishing liability and damages, "the Court must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (quoting *Marisol,* 185 F.R.D. at 164 (S.D.N.Y. 1999)).

A trial on the merits would involve significant risk as to both liability and damages.  While Plaintiffs believe that they could ultimately establish Defendant's liability, this would require significant factual development and favorable outcomes at trial and on appeal, both of which are inherently uncertain and lengthy.  *See* Dkt. No. 55-5 at 9.  Moreover, the class was not certified

prior to today, even though risk of obtaining class certification and maintaining it is admittedly remote.  At this point, settlement eliminates these risks, expenses, and delay; therefore, this factor favors final approval.  These factors therefore weigh in favor of final approval.

### e.  Defendant's Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)

Although Defendant could likely withstand a judgment greater than $120,000.00, "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d at 178 n. 9 (alterations and citation omitted)).  Here, the settlement eliminates the risk of collection in any circumstance.  Therefore, this factor also favors final approval.

### f.  The Settlement Fund is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factor 8 and 9)

The settlement is substantial given the risks of litigation discussed above, even in light of the maximum possible recovery.  The determination of whether a settlement amount is reasonable "does not involve use of a mathematical equation yielding a particularized sum."  *Henry v. Little Mint, Inc.*, No. 12 Civ. 3396, 2014 WL 2199427, at *10 (S.D.N.Y. May 23, 2014) (quotations and citations omitted).  Instead, settlement should be within a "range of reasonableness . . . which recognize[s] the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Id.* (quotation omitted).  "Even a 'cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair.'"  *Sanchez v. Kambousi Rest. Partners, LLC,* No. 15 Civ. 5880, 2016 WL 11717105, at *10 (S.D.N.Y. Aug. 5, 2016) (quoting *Tiro v. Public House Investments, LLC,* Nos. 22 Civ. 7679, 11 Civ. 8249, 2013 WL 4830949, at *9 (S.D.N.Y. Sept. 10, 2013)

(quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)).

Here, the settlement provides much more than "a fraction of the potential recovery." Class Counsel estimates that each class member will receive a payment based upon the total number of weeks worked during the relevant time period relative to other class members. *See* Dkt. No. 55-5 at 11. Although it is possible that the class could recover more at trial, where a "settlement assures immediate payment of substantial amounts to class members," *Henry*, 2014 WL 2199427, at *10 (quoting *Henry v. Little Mint, Inc.,* 2014 WL 2199427, at *10 (S.D.N.Y. May 23, 2014)), as is the case here, a settlement is reasonable under this factor, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road.'" *Id.* (quoting *Henry,* 2014 WL 2199427, at *10). Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

In sum, each of the *Grinnell* factors weigh in favor of final approval of the settlement. Since the settlement, on its face, is "fair, adequate, and reasonable, and not a product of collusion," *Giuliani*, 218 F.3d at 138-39, the final approval of the settlement is granted.

## C. Attorneys' Fees and Costs

"Attorneys who create a common fund from which members of a class are compensated are entitled to a reasonable fee—set by the court—to be taken from the fund." *Story v. SEFCU*, No. 1:18-cv-764, 2021 WL 736962, at *11 (N.D.N.Y. Feb. 25, 2021) (internal quotation marks and citation omitted). "Such a fee award directly depletes the amount by which the class benefits."

*Id.* "Accordingly, the Court has a duty to award fees with moderation and a regard for the rights of those with an interest in the fund who are not before the Court." *Id.* (citation omitted).

The Second Circuit "has sanctioned two methods—the percentage method and lodestar method—for calculating reasonable attorneys' fees in class actions." *Story*, 2021 WL 736962, at *12 (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). "The Court has discretion to award fees based on either the percentage method or the lodestar method." *Id.* (citing *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)). "Courts in this Circuit routinely use the percentage method to compensate attorneys in common fund cases such as this action." *Id.* (citations omitted). The "percentage method" is the far simpler method "by which the fee award is some percentage of the fund created for the benefit of the class." *Id.* (internal quotation marks and citations omitted). "When utilizing the percentage method, courts often 'crosscheck' the adequacy of the resulting fee by applying the lodestar method." *Id.* (citing *Goldberger,* 209 F.3d at 50). "Under use of either method, the touchstone of the inquiry is whether the award is reasonable." *Id.* (citing *Goldberger*, 209 F.3d at 50). "A court determines reasonableness by evaluating: (1) counsel's time and labor; (2) the litigation's complexities and magnitude; (3) the litigation risks; (4) quality of representation; (5) the relationship of the requested fee to the settlement; and (6) considerations of public policy." *Id.* (citation omitted).

**1. Comparison to Court-Approved Fees in Other Common Fund Settlements**

"In using the percentage of the fund approach, the Court must first determine a baseline reasonable fee percentage in relation to the settlement, using common fund settlements of similar magnitude and complexity as guidance." *Story*, 2021 WL 736962, at *12 (citation omitted). "Additionally, a sliding scale approach—awarding a smaller percentage of the settlement as the

amount of the settlement fund increases—is appropriate in order to avoid overcompensating the plaintiff's counsel to the detriment of the class members they represent." *Id.* (citations omitted).

Class Counsel argues that a fee of 40% of the value of the Settlement to be payable from the Settlement Fund is reasonable and commonly awarded in cases of this nature. After careful consideration, the Court concludes 33% is a more reasonable baseline fee in this matter. Although Counsel refers to *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) in support of the request for 40%, an award of 33% is in line with the majority of precedent in the Northern District of New York, as well as the Second Circuit. *See, e.g.*, *Edwards v. Mid-Hudson Valley Fed. Credit Union*, No. 1:22-cv-562, 2023 WL 5806409, at *11 (N.D.N.Y. Sept. 7, 2023) (awarding class counsel 33.33% of the Settlement Fund); *Lowe v. NBT Bank, N.A.*, No. 3:19-cv-1400, 2022 WL 4621433, at *11 (N.D.N.Y. Sept. 30, 2022) (same); *Thompson v. Cmty. Bank, N.A.*, No. 8:19-cv-919, 2021 WL 4084148, at *10 (N.D.N.Y. Sept. 8, 2021) (same); *Baudin v. Res. Mktg. Corp., LLC*, No. 1:19-cv-386, 2020 WL 4732083, at *12 (N.D.N.Y. Aug. 13, 2020) (same); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *19 (S.D.N.Y. Sept. 2011); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010). A fee of 33% of the value of the Settlement is reasonable and "consistent with the norms of class litigation in this circuit." *Willix v. Healthfirst, Inc.*, No. 07 Civ 1143, 2011 WL 754862, at *7 (S.D.N.Y. Feb. 18, 2011) (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)).

### 2. Counsel's Time and Labor

Class Counsel expended significant effort to achieve the settlement. During the formal litigation of this action, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses. *See* Dkt. No. 55-1 at ¶ 7. Class Counsel engaged in discovery.

*See id.* Finally, Class Counsel took part in mediation, and negotiated the terms of a favorable settlement for Plaintiffs and the class members. *See id.*

Class Counsel is particularly experienced in the litigation of class action cases in New York, primarily employment and labor law class actions. *See id.* at ¶ 5. In negotiating this settlement, Class Counsel had the benefit of years of experience and familiarity with the facts of this case as well as with other employment and labor law class actions, including numerous cases within the Northern District of New York. *See id.*

Upon completion of the Agreement, Plaintiffs drafted and filed their motion for Preliminary Approval. Dkt. No. 55-5. After Preliminary Approval was granted, Class Counsel worked and communicated with the Settlement Administrator to ensure that the Notice Program was carried out efficiently and correctly. Further, Class Counsel spent time preparing the Motion for Final Approval, which included the filing of an additional declaration, and preparing for and attending the Final Approval Hearing. Moreover, Class Counsel prepared and filed a letter brief in further support of their motion based on the Final Fairness Hearing. Finally, there will be additional post-Final Approval work ensuring that the settlement benefits are properly distributed to class members. Dkt. No. 55-1 at ¶ 7.

Class Counsel asserts that they spent 93.7 hours working on this case thus far. *See id.* at ¶ 9. Considering the complexity of class actions in general and the overall result obtained, the time spent by counsel is reasonable and supports the requested award at a rate of 33%.

### 3. Complexity of the Case

The magnitude and complexity of this case also supports the requested award. "Most class actions are inherently complex, and settlement avoids the costs, delays and multitudes of other problems associated with them." *Story*, 2021 WL 736962, at *13 (internal quotation marks and

13

citation omitted).  "Among [Fair Labor Standards Act] cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)."  *Brennan*, 2011 WL 4357346, at \*17.  "Because the same set of operative facts is being applied and analyzed under both statutory frameworks, justice is served and consistency and efficiency are achieved by having the litigation in one forum."  *Id.* (citing *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001)).  This case is no exception; the matter at hand involved mixed questions of law and fact, and these mixed factual and legal questions support approval of Class Counsel's attorneys' fee request.

### 4. Risk of Litigation

Class Counsel undertook risk in accepting the case on a contingency basis.  *Story*, 2021 WL 736962, at \*13.  In the face of the risk of no recovery, Class Counsel proceeded with the litigation and obtained a favorable outcome for the class.  Thus, Class Counsel invested extensive time and costs with no guarantee of success.

### 5.  Quality of the Representation

Class Counsel competently and efficiently represented Plaintiffs in prosecuting this Action; Class Counsel's skill and experience were directly responsible for the favorable legal settlement and weigh in favor of granting the requested fees.  As such, this factor supports the requested award.

### 6.  Policy Considerations

The attorneys' fees award may be altered due to policy considerations.  *See In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 (2d Cir. 2014).  Attorneys' fees should reflect the important public policy goal of "providing lawyers with sufficient incentive to bring common

fund cases that serve the public interest." *Goldberger*, 209 F.3d at 51 (citation omitted). "On the other hand, fees should compensate counsel only for the value they create, or the court risks incentivizing class counsel to settle cases in a manner detrimental to the class." *Story*, 2021 WL 736962, at *13 (citation omitted).

Class Counsel obtained a favorable settlement in an efficient manner. Ultimately, Class Counsel's fee award is tied directly to the value of the settlement they created. Accordingly, Class Counsel is granted an award of attorneys' fees in the amount of $42,150.

### 7. Lodestar Cross-Check

When assessing the reasonableness of a fee award, a court may use the lodestar amount as a cross-check for the percentage of the fund method. *In re Citigroup Inc. Sec. Litig.,* 965 F. Supp. 2d 369, 388 (S.D.N.Y. 2013). When the lodestar method is used as a cross-check, "the Court need not exhaustively scrutinize the hours documented by class counsel; instead the reasonableness of the lodestar can be tested by the court's familiarity with the case." *Melito v. Am. Eagle Outfitters, Inc.*, 14-cv-2440, 2017 WL 3995619, at * 19 (S.D.N.Y. Sept. 11, 2017) (internal quotation marks and citation omitted).

Here, Class Counsel asserts that its lodestar is $31,920.00, thereby making Class Counsel's request for 40% of the Settlement Fund to be a multiplier of 1.504 their lodestar. *See* Dkt. No. 55-5 at 19. The lodestar multiplier further supports the Court's decision that the attorneys fees award should be based on the Settlement Fund. *See, e.g.*, *Sewell v. Bond Lend Leas, Inc.*, 09-Civ.-6548, 2012 WL 1320124, at *13 ("Courts commonly award lodestar multipliers between two and six."); *In re Lloyd's Am. Trust Fund Litig.,* 96-cv-1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within

the Second Circuit"). Accordingly, Class Counsel is entitled to $42,150 in reasonable attorney's fees.

### D. The Class Representatives Are Entitled to Service Awards

Plaintiffs move for service awards in the amount of $3,000.00 for Plaintiff Scott Ruffner and $2,000.00 for Plaintiff Jeffrey Nimmo. Given the contribution made by the two named plaintiffs to the prosecution of this action, and the reasonable amount of the proposed awards, the motion is granted. *See, e.g.*, *Bowers v. Atl., Maint. Corp.*, 546 F. Supp. 2d 55, 80 (E.D.N.Y.2008).

### E. Settlement Claims Administrator's Fees

While Plaintiffs do not move for fees to be paid out to the Settlement Administrator in the memorandum of law or the motion, the inclusion of this request in the declaration, *see* Dkt. No. 55-1 at 5, as well as the proposed Order, *see* Dkt. No. 55-4 ¶ 10, will be construed as such. The Court finds that $10,000.00 in settlement administration fees is reasonable given the duties required of the settlement administrator, as well as the inclusion of this precise sum in the Settlement Agreement and Release. *See* Dkt. No. 55-2 ¶ 2.2; *see also Kirby v. FIC Restaurants, Inc.*, 5:19-CV-1306, 2020 WL 5791582 (citing *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 316 (E.D.N.Y. 2015) (finding that "[c]ourts within this district have awarded up to $50,000 for the settlement claims administrator") (citation omitted).

### F. Conclusion

Accordingly, the Court hereby

**ORDERS** that Plaintiffs' unopposed motion for final approval of the Settlement Agreement, *see* Dkt. No. 55, is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's Motion for service awards (**$3,000.00** for Plaintiff Scott Ruffner and **$2,000.00** for Plaintiff Jeffrey Nimmo) and claims administration fees (**$10,000.00**), *see* Dkt.

No. 55, is **GRANTED**; and the Court further

ORDERS that Plaintiff's Motion for Attorney Fees is **DENIED** in the amount of $48,000 but is **GRANTED** in the amount of **$42,150**; and the Court further

ORDERS that class members who have not properly and timely exercised their opt-out rights are conclusively deemed to have released or discharged Defendant and its present and former owners, officers, directors and employees from, and are permanently enjoined and barred from asserting, either directly or indirectly, against Defendant, any and all claims released in the Revised Settlement Agreement. All such matters are hereby finally concluded, terminated and extinguished; and the Court further

ORDERS that Analytics Consulting LLC, the Settlement Claims Administrator, shall distribute the settlement funds in accordance with the terms of the Settlement Agreement; and the Court further

ORDERS that the Clerk of the Court shall enter Final Judgment consistent with this Memorandum-Decision and Order, and dismiss this case **with prejudice**; and the Court further

ORDERS that, without affecting the finality of this Memorandum-Decision and Order, the Court will retain jurisdiction over the case following the entry of the dismissal **with prejudice** of this action to enforce the Settlement Agreement until 30 days after the end of the time for settlement class members to cash their settlement check has expired, as defined in the Settlement Agreement. The parties shall abide by all terms of the Settlement Agreement and this Memorandum-Decision and Order.

Dated: April 21, 2026

Elizabeth C. Coombe
U.S. District Judge

17